IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**OBP CORPORATION, d/b/a OBP MEDICAL,**

        **PLAINTIFF,**

    V.                                 5:16cv126
                                                  (TJM/DEP)

**NAUTILUS INS. CO.,**

        **DEFENDANT.**

Thomas J. McAvoy
Senior United States Judge

## DECISION AND ORDER

Before the Court are the parties' cross-motions for partial summary judgment. See dkt. ## 15, 25. The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

**I.    BACKGROUND**

This case concerns a dispute over insurance coverage. At the times relevant to this lawsuit, Defendant Nautilus Insurance Company ("Nautilus") provided Plaintiff OBP Corporation ("OBP") with general liability insurance. During the time that insurance was in place, Welch Allyn, Inc. sued Plaintiff in this Court, alleging patent infringement, trade dress infringement, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and violations of New York common and statutory law. See Welch Allyn, Inc. v. OBP Corp., et al., No.5:14cv1422 (N.D.N.Y.). The products at issue were specula used

for gynecological examinations. After Nautilus denied coverage, OBP filed the instant declaratory judgment action that contends that the policy Defendant issued provides coverage for the Welch Allyn action.

OBP is a Massachusetts corporation with a principal place of business in that state. Plaintiff's Statement of Material Facts ("Plaintiff's Statement"), dkt. # 15-25, at ¶ 1. Nautilus is an Airzona corporation with a principal place of business in that state. Id. at ¶ 3. OBP asserts that it does business in New York regularly, including in Onondaga County, which is in the Northern District of New York. Id. at ¶ 2. Defendant, pointing out that discovery has not yet occurred, contends that it lacks information sufficient to respond to that assertion. Defendant's Response to Plaintiff's Statement ("Defendant's Response"), dkt. # 25-7, at ¶ 2. The parties agree, however, that Nautilus sells insurance in New York and does business in New York. Plaintiff's Statement at ¶ 4.

Nautilus issued OBP a series of general liability insurance policies from November 2, 2009. Id. at ¶¶ 6-7. The policy issued in 2009 had $1 million in coverage. Id. at ¶ 6. Plaintiff points to policy language that provides coverage for "personal and advertising injury." Id. at ¶ 8. That language also provides that Nautilus has "the right and duty to defend the insured against any 'suit' seeking those damages[.]" Id. A "personal and advertising injury" includes an "oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services[,]" uses "another's advertising idea in your 'advertisement[,]" or "[infringes] upon another's . . . trade dress . . . in your 'advertisement'." Id. Several exclusions apply to this personal and advertising injury coverage. Id. at ¶ 9. One exclusion applies to such injuries "caused by or at the direction of the insured with knowledge that the act

2

would violate the rights of another and would inflict" the covered injury.  Id.  Another excludes coverage for material published prior to the policy period.  Id.  A third excludes such injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."  Id.  Section 2(i) of those exclusions made the personal and advertising injury coverage inapplicable "to infringement, in your 'advertisement', of copyright, trade dress, or slogan."  Id.  Defendant admits that the policies contain this language, but argues that Plaintiff has failed to provide any admissible evidence regarding the policy terms, and no discovery has occurred regarding those terms.  Defendant's Response at ¶ 9.

The policy Defendant issued to OBP for the November 2, 2009 to November 10, 2010 period contained a "Schedule of Forms and Endorsements" which listed Form S222 (05/04), an exclusion for intellectual property rights.  Plaintiff's Statement at ¶ 10.  The parties disagree about whether Plaintiff ever received this form with the copy of the policy Nautilus provided in 2009.  Id. at ¶ 11; Defendant's Response at ¶ 11.  The form in question contained an exclusion that amended section 2(i) of the exclusions in the original policy to provide that the coverage did not apply to "'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret, other intellectual property rights, or the use of another's advertising idea" in advertising.  Plaintiff's Statement at ¶ 12.  Similarly, when OBP renewed its policy with Defendant in 2011, the policy listed as an endorsement form S222 (07/09), which was an exclusion for intellectual property rights.  Id. at ¶ 13.  The parties disagree about whether Plaintiff ever received a copy of this endorsement.  Id. at ¶ 14; Defendant's Response at ¶ 14.  The endorsement provided that the "insurance does not apply to: . . . 'Personal and

3

advertising injury arising out of the infringement, use, or violation of 'intellectual property rights', including the infringement, use, or violation of another's 'advertising idea' in your 'advertisement'." Plaintiff's Statement at ¶ 15.

Welch Allyn filed suit on September 12, 2014. Id. at ¶ 24. The Complaint in that action included a number of intellectual property claims related to OBP's alleged use of a color-coding system on medical specula that would likely confuse a consumer about the source of the product, leading that consumer to believe that Welch Allyn had manufactured the product. Id. at 25. Welch Allyn's Complaint contained a copy of OBP's advertising, which allegedly violated Welch Allyn's intellectual property rights. Id. at ¶ 27. Tracey Bennett testified as Welch Allyn's corporate representative in that lawsuit. Id. at ¶ 28. Bennett testified that she found OBP's advertising inaccurate, untrue, and likely to cause confusion for consumers. Id. at ¶¶ 29-30, 32-33, 35-39. Such advertising, she alleged, had damaged Welch Allyn. Id. at ¶ 31, 34, 40.

OBP provided Nautilus with notice of Welch Allyn's Complaint on September 17, 2014. Id. at ¶ 42. Nautilus acknowledged receipt on September 24, 2014. Id. at ¶ 43. Nautilus denied coverage on October 24, 2014, contending that the Complaint did not allege any personal or advertising injury within the meaning of the policy. Id. at ¶ 44. Even if the Complaint did allege such injury, Defendant asserted, the policy's exclusions prevented any coverage. Id. at ¶ 44. Plaintiff claims to have been forced to pay for its own defense after that initial denial of coverage. Id. at ¶ 45. On February 2, 2016, however, OBP sent Nautilus a letter seeking reconsideration of the coverage decision. Id. at ¶ 46. That letter pointed to discovery in the Welch Allyn matter that implicated the advertising injury coverage. Id. at ¶ 46. The letter included the relevant portions of

4

Bennett's testimony. Id. Nautilus agreed to defend OBP under a reservation of rights on March 18, 2016. Id. at ¶ 47. That coverage commenced on December 15, 2015, but Defendant refused to provide coverage from the date of first tender, September 17, 2014. Id. at ¶ 18.

After filing the action, Plaintiff filed a motion for summary judgment, contending that Nautilus had a clear duty under the policy to defend and indemnify against the Welch Allyn suit. Plaintiff filed the motion on March 31, 2016, before Defendant answered the Complaint. Defendant responded and filed a cross motion for partial summary judgment. The parties then briefed the issues, bringing the case to its present posture.

## II.   LEGAL STANDARD

Defendant has moved for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tennenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is

able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon 'mere allegations or denials' asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III.  ANALYSIS

As related above, the Defendant has agreed to provide coverage–with a reservation of rights–for claims from December 15, 2015 onward. Plaintiff provided Nautilus with notice of the Welch Allyn suit on September 17, 2014, and Defendant disclaimed coverage. As such, the issue before the Court is whether Nautilus was compelled to provide coverage from September 17, 2014 until December 15, 2015. The parties offer various grounds for why their motions should be granted. For reasons that shall become clear, the Court will address only the issue of the law that should apply to this matter.

#### A. Choice of Law

The parties disagree about the law to be applied in this case. Plaintiff contends that the Court should apply New York law,[1] while Defendant insists that the Court

---

[1] Plaintiff's case-law citations are provided in footnotes. The Court notes that Local Rule 10.1(5) provides that "extensive footnotes must not be used to circumvent page limitations." Plaintiff's briefing practice skirts this limitation and makes the brief harder to read than necessary. The Court instructs Plaintiff to place case citations in

should use Massachusetts law.  In its opening brief, Plaintiff insists that no party had alleged that any law but that of New York would apply to this action. Defendant points out that OBP filed its motion for summary judgment before Nautilus even answered the Complaint.  Having answered the Complaint, Defendant insists that Massachusetts law applies.  Defendant points out that OBP is a Massachusetts company, the principle location of the insured risk is in Massachusetts, and the policy was issued in Massachusetts.  Under New York choice of law rules, Defendant insists, Massachusetts law should govern the action.  Plaintiff responds that the underlying lawsuit that gave rise to this litigation has been filed in New York, and thus discovery and mediation will take place in that state.  As such, New York has a stronger relation to the suit than Massachusetts.

"In diversity cases, federal courts apply the choice of law rules of the forum state[.]"  Gilbert v. Seton Hall Univ., 332 F.3d 105, 109 (2d Cir. 2003).  Thus, in New York, the court's "task is to determine what law New York courts would apply in [the] situation" involved.  Id.  (quoting O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 857 (2d Cir. 1984)).  New York's choice-of-law rules follow a three-step process.  Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1981).  "First, the court must isolate the issue on which the laws conflict."  Id.  Next, the court is to "identify the purposes of the conflicting state laws to determine whether a genuine conflict exists."  Id.  Finally, the court is to "examine the contacts of the interest jurisdictions to ascertain which has the closer connection with the facts of the case and thus the superior interest in seeing

---

the body of its briefs in the future.  Failure to follow this instruction may cause the Court to strike the brief.

its law applied." Id. Under New York law, "'[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" Id. (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223, 613 N.E.2d 936, 597 N.Y.S.2d 904 (1993)).

If the court finds an actual conflict, the court in a contracts case "applies a 'grouping of contacts' theory[.]" Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 151 (2d Cir. 2008) (quoting Auten v. Auten, 308 N.Y. !55, 160-162, 124 N.E.2d 99 (1954)). The court seeks "a 'spectrum of significant contacts–rather than a single possibly fortuitous event[.]'" Id. (quoting In re Allstate, 81 N.Y.2d at 226). The court's aim "is to establish which State has 'the most significant relationship to the transaction and the parties.'" Id. (quoting Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 642 N.E.2d 1065, 618 N.Y.S.2d 609 (1974)).

New York adds additional factors to the "'traditionally determinative choice of law factor of the place of contracting[.]'" Id. (quoting Zurich, 84 N.Y.2d at 317). Those factor are: "'the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.'" Id. at 152 (quoting Zurich, 84 N.Y. at 317. In insurance cases, the court is to "apply 'the local law of the state which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties.'" Id. (quoting Restatement (Second) of Conflict of Laws § 193 (1971)). Still, New York courts commonly ignore this rule "'when the risk is located in two or more states.'" Id. (quoting Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 153 (2d Cir. 2003)). A strong state interest might also influence the choice of law when "'the policies underlying conflicting laws in a contract

8

dispute are readily identifiable and reflect strong governmental interests[.]" Id. (quoting In re Allstate, 81 N.Y.2d at 226).

The Court must therefore first determine the particular legal dispute in question and decide whether an actual conflict exists. Plaintiff points to one area of law where a conflict allegedly occurs: Massachusetts law does not require that an insurer provide the insured notice of changes in reductions in coverage in a commercial general liability policy, while New York's Insurance Law § 3426(e) requires insurers to provide notice to the insured of reductions in coverage.[2] Plaintiff contends that Defendant did not provide Plaintiff with a copy of the new exclusion upon renewing the policy in 2011. If Massachusetts law applies, this failure to provide information is immaterial to the terms of the policy at the time of Welch Allyn's Complaint. The policy as written in 2014 would likely be used to determine whether the exclusion in question prevents coverage. If New York law applies, then the policy as delivered before the new exclusion likely would determine whether coverage exists.

The problem for the Court is that no discovery has occurred, and, as explained

---

[2]That section provides that:
> (e)(1) A covered policy shall remain in full force and effect pursuant to the same terms, conditions and rates unless written notice is mailed or delivered by the insurer to the first-named insured, at the address shown on the policy, and to such insured's authorized agent or broker, indicating the insurer's intention:
>
> . . .
>
> (B) to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusion, or upon increased premiums in excess of ten percent[.]

NY Ins. Law § 3426(e).

above, the parties disagree as to whether Plaintiff ever received notice of the new exclusion. If Defendant actually sent Plaintiff a copy of that new exclusion, as Nautilus insists it did, then Plaintiff would have no claim under New York law that the current policy language does not apply. If Defendant failed to provide OBP with a copy of the new exclusion, then a material conflict would exist and the Court would be required to apply a "grouping of contacts" analysis to determine whether to apply New York or Massachusetts law. Neither party has pointed to another area of law where conflict exists. If no other area of conflict exists and evidence demonstrates that Plaintiff received a copy of the changes, then no actual conflict exists eliminating the need to examine the grouping of contacts.

The Court concludes that the evidence is insufficient at this point to decide which state's law applies, and whether there is a conflict of laws in any material sense. The parties, despite their focus on the issue of the applicability of the exclusion, complicate the matter by applying different states' law to each issue in the case without making any attempt to determine whether there is a conflict on those issues. Because discovery is necessary to resolve these issues, the Court will deny the parties' motions for summary judgment with leave to re-file after sufficient discovery has been conducted to determine which policy documents Plaintiff possessed at the relevant times. Resolving this issue after the parties conduct discovery will be the most efficient use of the Court's time.

## IV. CONCLUSION

For the reasons stated above, the Court will deny the Plaintiff's motion for partial summary judgment, dkt. # 15, and Defendant's cross motion for partial summary

judgment, dkt. # 25, with leave to re-file after the parties have conducted the appropriate discovery.

**IT IS SO ORDERED.**

**DATED:**  August 23, 2016

*/s/ Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge